DOUCET, Judge.
Appellant, Western Rental and Equipment Company, Inc. (hereinafter referred to as Western), filed suit against appellee, D.M.T. Rental Tools, Inc. (hereinafter referred to as D.M.T.), for $39,866.25 as a result of oilfield pipes that were allegedly damaged while being leased to D.M.T. After a trial on the merits, the lower court rendered judgment in favor of Western and against D.M.T. for $7,285.75. It is from this judgment that Western appeals.
In August of 1983, Western rented to D.M.T., 405 joints of oilfield pipe. D.M.T. subsequently subleased this pipe to Davis Oil Company and in the course of business, transported the pipe from its storage site, Pipe Boring, Inc., to the well site. After Davis Oil Company was finished with the pipe, D.M.T. transported it back to Pipe Boring, Inc. At this point, John Byerley, Jr., owner of Pipe Boring, Inc., visually inspected the pipes and determined that 15 of the joints had bad pins and needed to be recut, 135 joints had bad collars that needed to be changed, and that 255 joints had mashed body walls and deep tong cuts and therefore needed to be replaced or “junked”. The pipes were also visually inspected by Frank Williams and Rusty Smith, both D.M.T. employees. The two D.M.T. employees did not actually count the damaged joints, pins or collars, but instead relied on Mr. Byerley’s representations. David Gautreaux, the general manager of D.M.T. and Jim Fowlkes of Davis Oil Company also visually inspected the pipe but both could not determine the extent of the damages. Finally, Gary Cessac, a drilling completion consultant for Lafayette Professional Consultants, inspected the pipe both on the well site and on Pipe Boring’s yard and contends that only 30 joints were badly mashed and needed to be replaced.
In connection with their agreement, Western sent to D.M.T. a bill for the alleged damage done to the pipes. At this point in time, D.M.T. inquired as to whether an independent inspection was performed and was assured that it had been. D.M.T. also requested written documentation to verify the damages and was assured that it was forthcoming. Western responded to D.M.T.’s request for verification by submitting a “dummy” (bogus) invoice from Delta Inspection Company. A representative from Delta testified at trial that they never performed this inspection. Additionally, a second invoice was submitted to D.M.T. from Pipe Boring, Inc. for the alleged inspection of the pipe. John Byer-ley, Jr. testified that he did perform the inspection.
On appeal, Western specifies four assignments of error, the first being that, “The court erred when it held that Frank Williams and Rusty Smith, employees of D.M.T., did no more than go through the motions of inspections of the pipe and did nothing more than okay the findings of John Byerley”. We disagree with Western’s contentions.
John Byerley, Jr. initially inspected the pipe when it was returned to his yard. As aforestated, Mr. Byerley determined the damage and indicated them on an invoice he submitted to D.M.T. for services that he rendered. Frank Williams and Rusty Smith, both employees of D.M.T., subsequently went to Pipe Boring, Inc. and allegedly visually inspected the pipe. While Western, in its appellate brief cites testimony from the record which indicates that the two employees actually counted each and every damaged joint, we find that the cited testimony is taken out of context. Instead, we conclude, like the trial court, that their inspection was cursory at best. This conclusion is supported by the fact that the two employees admitted to using Mr. Byer-ley’s invoice as a basis for their determination. Moreover, the employees were at Pipe Boring, Inc. for a total of 30 minutes. They could not have possibly inspected each and every joint in this short period of time. Additionally, the pipes were all stacked up together on a rack. It was impossible for the two employees to visual *969 ly inspect anything but the outer layer of pipe without taking each pipe down and inspecting it individually. Finally, David Gautreaux, an employee of D.M.T. testified that Mr. Williams and Mr. Smith did not actually count each of the joints, but instead only looked at the stack of pipe as a whole. All of these factors, when taken as a whole, indicate the cursory nature of Mr. Williams’ and Mr. Smith’s inspections. Thus, finding no manifest error or abuse of discussion, we affirm the portion of the trial court judgment reflecting same.
Western, in its second assignment of error, contends that “The Court erred when it disallowed the $3,240.00 charge for the inspection of 405 joints of pipe at $8.00 per joint as claimed by the plaintiff.” We disagree.
Western submitted to D.M.T. an invoice from Delta Inspection Company for payment. The charges amounted to $3,240.00. The invoice stated that an in-ductograph, which is an electronic inspection, had been performed on the pipes. Mr. Lyles, Western’s manager, admitted that the Delta invoice was a “dummy” or bogus, invoice and it was established at trial that an inductograph was never performed. Western also submitted an invoice'from Pipe Boring, Inc. in the exact amount for the same alleged inspection. Because the inductograph was never performed, and because D.M.T. was sent two invoices from two different inspection companies for the same alleged inspection with no valid explanation as to why this was done, we find no manifest error in the trial court’s conclusion that Western simply did not prove this item of damages.
In assignment of error number three, Western asserts that “The Court erred when it disallowed the charge of $32,620.00 claimed by Plaintiff for the damage done to 255 joints of rented pipe.” We disagree.
Western asserts that 255 joints were damaged beyond repair. As correctly stated by D.M.T. in its appellate brief, “... The amount of damage claimed was extraordinary and prudence required that an independent electronic inspection should be conducted to verify the claim.” D.M.T. questioned Western as to whether this inspection was performed and was assured that it was and that written documentation verifying the damages was forthcoming. This documentation was never produced and in fact, it was established at trial that the alleged inductograph or electronic inspection was never performed. Instead, it was established that only a visual inspection was performed.
Additionally, as previously stated, Western responded to D.M.T.’s request for verification by submitting a bogus invoice. Mr. Jim Fowlkes, the drilling and production manager for Davis Oil Company (the sub-lessee who would ultimately be liable for the damaged pipe) testified that he would never have accepted a bogus invoice, rather, he would have only accepted written verification of the alleged damage by production of a bona fide inspection report.
Finally, D.M.T. allegedly sold the damaged pipe as “junk”. There was no evidence presented at trial of the sale of the damaged pipe. Western could not produce the pipe, the person who bought it, or the invoices showing the sale. All Western had to do was simply produce the purchaser to swear to the transaction, but it did not do so.
All of the above factors, when considered as a whole, indicate that Western simply did not prove that 255 joints were damaged beyond repair, as found by the trial court. While we are aware of the fact that Mr. Byerley did visually inspect the pipe, we find that this was not enough in view of the fact that an electronic inspection was promised and never delivered. We do conclude, however, that Western is entitled to the cost of replacing thirty (30) joints which D.M.T. admits to being damaged. This amounts to $3,060.00.
Western, in its fourth and final assignment of error, urges that “The Court erred when it disallowed the charge of $540.00 for the cost of 135 damaged collars at $4.00 per collar.” We disagree.
Western contends that it is entitled to this item of damages because D.M.T. does not take issue with it. After review *970 ing the record, we fmd however, that D.M. T. does contest this item of damages and does so because Western did not produce any paper work substantiating its claim. In the original invoice submitted by Western to D.M.T., the charge of $540.00 was inserted. However, at trial, plaintiff introduced a second invoice from the same company, Pipe Boring, Inc., which did not contain the charge of $540.00. Because of this inconsistency, and because Western had no valid explanation as to why this inconsistency occurred, we find, as did the trial court, that plaintiff simply failed to prove this item of damages.
Accordingly, for the foregoing reasons, the judgment of the trial court is affirmed. All costs of the appeal are to be borne by plaintiff/appellant.
AFFIRMED.